**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| DAVID CUSHING,<br><br>      Plaintiff,<br><br>v.<br><br>GREENTREE MORTGAGE COMPANY, LP; FREEDOM MORTGAGE; NATIONSTAR MORTGAGE CORP. (D/B/A MR. COOPER); LAKEVIEW LOAN SERVICING, LLC; AND US BANK NATIONAL ASSOCIATION (SOLELY AS TRUSTEE FOR GUARANTEED REMIC PASS-THROUGH SECURITIES AND MX SECURITIES GINNIE MAE REMIC TRUST 2017-002);<br><br>      Defendants. | HONORABLE KAREN M. WILLIAMS<br><br>Civil Action No. 24-5742 (KMW-MJS)<br><br>**MEMORANDUM OPINION** |

**Appearances**:

David Cushing
1734 Almond Road
Vineland, NJ 08360
*Pro Se Plaintiff*

Lauren M. Law, Esq.
Sarah Ann Margot Slachetka, Esq.
FOLKMAN LAW OFFICES, P.C.
1949 Berlin Rd., Suite 100
Cherry Hill, NJ 08003
*Counsel for Defendant Greentree Mortgage Co., LP*

Robert D. Bailey, Esq.
HINSHAW & CULBERTSON LLP
800 Third Avenue, 13th Floor
New York, NY 10022
*Counsel for Defendant Freedom Mortgage*

Harold L. Kofman, Esq.
MCCALLA RAYMER LEIBERT PIERCE LLC
485 Route 1 South, Bldg. F, Ste. 300
Iselin, NJ 08830
*Counsel for Defendants Nationstar Mortgage Corp.; Lakeview Loan Servicing, LLC; and U.S. Bank National Association*

**WILLIAMS, District Judge:**

This matter comes before the Court on the Motions to Dismiss (the "Motions") (ECF Nos. 9, 10, 11) filed by Defendant Lakeview Loan Servicing, LLC ("Lakeview"), Nationstar Mortgage Corp. ("Nationstar"), and U.S. Bank National Association's ("U.S. Bank," collectively with Lakeview and Nationstar, "Lakeview Defendants") (ECF No. 9); Defendant Freedom Mortgage Corporation ("Freedom Mortgage") (ECF No. 10); and Defendant Greentree Mortgage Company, LP ("Greentree," collectively with Lakeview Defendants and Freedom Mortgage, "Defendants") (ECF No. 11); and Plaintiff David Cushing's ("Plaintiff") Opposition thereto (ECF Nos. 14, 16, 17); and Defendants' Replies (ECF No. 15, 19, 20). The Court, having reviewed the Parties' submissions and considered the papers without oral argument pursuant to Federal Rule of Civil Procedure 78(b), **GRANTS** Defendants' Motions and dismisses the Complaint without prejudice to Plaintiff's ability to file a motion seeking leave to amend the Complaint.

**I.     BACKGROUND**

On April 30, 2024, Plaintiff filed a Complaint and initiated an action in this Court. (Compl., ECF No. 1). The Court recognizes that Plaintiff is proceeding *pro se* and accordingly, will summarize the relevant facts underlying the case from what it can glean from the inartfully pled Complaint and the public records filed in the inter-related foreclosure action in the Superior Court of New Jersey to which Plaintiff was also a party.

Plaintiff's Complaint relates to his former property located at 1734 Almond Road, Vineland, New Jersey. (Compl. ¶¶ 4, 11, ECF No. 1). On January 6, 2017, Plaintiff recorded a mortgage with Greentree. (*Id.*, Ex. B). Plaintiff alleges that in January 2017, he was told that his payments would be to Freedom Mortgage without any indication as to why and without notice of an assignment of his mortgage. (*Id.* ¶ 15). Approximately four years after Plaintiff allegedly began

2

sending his payments to Freedom Mortgage, the mortgage was assigned from Mortgage Electronic Registration Systems, Inc. ("MERS") to Freedom Mortgage. (*Id.* ¶ 16, Ex. C). Then on February 9, 2022, the mortgage was assigned from Freedom Mortgage to Nationstar. (*Id.* ¶ 17, Ex. D). Two months later, the mortgage was assigned from Nationstar to Lakeview. (*Id.* ¶ 18, Ex. E).

Plaintiff alleges that his Federal Housing Authority ("FHA") loan was "covered under the CARES Act forbearance/foreclosure section," which required his lender to grant forbearance upon his request due to the COVID-19 pandemic. (*Id.* ¶¶ 21-23). Plaintiff requested forbearance from Freedom Mortgage on April 3, 2020, and Freedom Mortgage responded with a proposed forbearance plan. (*Id.* ¶¶ 24-25, Ex. G). Freedom Mortgage allegedly sent a late payment letter advising Plaintiff that payment in the amount of $1,442.48 was due and that he would be in default if he failed to pay. (*Id.* ¶ 26). According to Plaintiff, Freedom Mortgage mailed him a mortgage statement on April 20, 2020, which did not reflect that his loan was in forbearance. (*Id.* ¶ 28).

Plaintiff claims that on April 27, 2020, he sent Freedom Mortgage a "Notice of Error and Request for Correction ('NERC') letter wherein he rebutted" Freedom Mortgage's late payment and mortgage statement letters. (*Id.* ¶ 29). Plaintiff attached to his Complaint a copy of this letter, wherein Plaintiff states to Freedom Mortgage that its forbearance plan was "so unconscionable to me and my family, it is not in effect." (ECF No. 1-2 at 37, Ex. H). Therein, Plaintiff indicates that he submitted a counteroffer to Freedom Mortgage concerning the proposed forbearance, to which he was awaiting Freedom Mortgage's signed response. (*Id.*) Plaintiff alleges that Freedom Mortgage requested more time to respond to his NERC letter the next day and again on April 28 and May 1, 2020. (*Id.* ¶ 30). Then, on May 4, 2020, Plaintiff received a letter from Freedom Mortgage indicating that his mortgage was two payments overdue. (*Id.* ¶ 31).

On September 7, 2021, Plaintiff purportedly mailed Lakeview an offer from an undisclosed investor to buy his loan for the full amount "admittedly due."[1] (*Id.* ¶ 37). Regardless, on September 6, 2022, Lakeview proceeded to file a foreclosure action in the Superior Court of New Jersey, Chancery Division, in Cumberland County, bearing Docket No. F-9304-22. (*Id.* ¶ 39). Plaintiff asserts that he was not properly served a copy of Lakeview's foreclosure complaint, which was instead served at an address in Pennsylvania where Plaintiff neither lives nor works. (*Id.* ¶ 41). Plaintiff nonetheless participated in the state court foreclosure action, filing an Answer which asserted defenses related to, *inter alia*, Defendants' alleged lack of standing to foreclose and violations of 12 U.S.C. § 2605 of RESPA, which the state court struck as non-contesting. Declaration of Harold L. Kofman, Esq. ("Kofman Decl."), Ex. J, Ex. K, ECF Nos. 9-11, 9-12). Plaintiff then filed an Emergent Application for leave to file an Amended Answer, Defenses, and Counterclaims again asserting Lakeview lacked standing, which the state court denied on the grounds that amendment would be futile. (*Id.*, Ex. L, Ex. M). On May 24, 2023, the state court entered a final judgment of foreclosure. (Kofman Decl., Ex. O, ECF No. 9-16 at 4-6).

Plaintiff's Complaint in the instant action alleges that "defendants were prohibited, under the CARES Act to take the steps they have taken." (Compl. ¶ 46). According to Plaintiff, "the foreclosing entities did not have rights to the Note, or the Mortgage," and refused to allow the undisclosed investor to purchase the original note, because they "did not have the required documents to prove they had standing to foreclose." (*Id.* ¶ 47). Thus, the Complaint purports, "the CARES Act and NJ statutes were violated by the defendants in this action, and an improper entity was allowed to foreclose." (*Id.* ¶ 49).

---

[1] Plaintiff further alleges that Lakeview's rejection of his investor's offer violated the New Jersey foreclosure statutes requiring servicers to respond to good faith offers to purchase the property. (*Id.* ¶ 42-45, ECF No. 1 at 10-12).

Plaintiff's Complaint asserts three causes of action. The first cause of action alleges violations of 12 U.S.C. § 2605 against all Defendants (*id.* at 13-18), for: (1) refusing to allow Plaintiff's investor to purchase the loan or otherwise respond to his offer, (*id.* ¶¶ 55-56); (2) failing to provide Plaintiff notice that his mortgage was assigned from Freedom Mortgage to Nationstar on February 9, 2022, (*id.* ¶ 60); (3) failing to provide Plaintiff notice that his mortgage was assigned from Nationstar to Lakeview on April 7, 2022, (*id.* ¶ 61); (4) failing to respond to a Qualified Written Request ("QWR") dated September 22, 2023 pursuant to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e)(l)(B)(ii) that Plaintiff allegedly sent to Lakeview, (*id.* ¶¶ 63-66); and (5) failing to respond to Plaintiff's NERC letter, (*id.* ¶¶ 68-69). As a result of these purported violations, Plaintiff allegedly suffered the following injuries: (1) the denial of his right to pay off his home through his investor's purchase; (2) the denial of his ability to "have the forbearance added to the end of his loan"; (3) the denial of "the full 360 days that a forbearance can be provided"; (4) "actual damages in trying to keep his home, that he would not have had to otherwise expend"; and ultimately, (5) the foreclosure of his home. (*Id.* ¶¶ 71-72).

Plaintiff asserts his second cause of action against all Defendants for "violations of 12 CFR 1024, RESPA, Regulation X, and the CARES Act." (ECF No. 1 at 18-21). Plaintiff claims that when Freedom Mortgage decided not to foreclose, it assigned the mortgage to Nationstar, which in turn assigned it to Lakeview upon realizing that it did not have standing to foreclose. (*Id.* ¶¶ 83-84). Then, Lakeview purportedly foreclosed on the property "without standing to bring the case." (*Id.* ¶ 85). In sum, Plaintiff rests this count on his assertion that Defendants "all clearly failed and refused to adhere to the forbearance rules." (*Id.* ¶ 92). As a result of these alleged violations of RESPA, the CARES Act, and Regulations X and Z, Plaintiff purports that he "has been wrongfully

foreclosed upon, and is facing the total loss of his home at sale." (*Id.* ¶ 95). With respect to this count of Plaintiff's Complaint, Plaintiff asks this Court to stay the sale of his home. (*Id.* at 21).

Plaintiff alleges his third cause of action against all Defendants for "UCC VIOLATIONS." (*Id.* at 22). In support of this count, Plaintiff alleges that Lakeview improvidently executed the foreclosure process because it was not entitled to enforce the loan and "was not a holder in due course." (*Id.* ¶¶ 102-03). According to Plaintiff, "none of the Assignments provided rights as a holder in due course." (*Id.* ¶ 107). Plaintiff alleges with respect to his third cause of action that because of Defendants' foregoing "actions/inactions," Plaintiff has been "made to suffer actual damages, in the pending loss of his home." (*Id.* ¶ 110). Plaintiff, reiterating his belief that Defendants did not have standing to foreclose his property, asks this Court to grant an injunction staying the sale of the property pending the outcome of this action. (*Id.* at 24-25, ¶¶ 112-17).

## II.   **STANDARD OF REVIEW**

### a.   **Rule 12(b)(1)**

Under Rule 12(b)(1), a defendant may seek dismissal of a complaint based on a court's lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "At issue in a Rule 12(b)(1) motion is the court's 'very power to hear the case.'" *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (citing *Marbury v. Madison*, 1 Cranch (5 U.S.) 137, 173-180 (1803)).

The *Rooker-Feldman* doctrine prohibits district courts from relying on their original jurisdiction to engage in appellate review of state-court orders. *See Verizon Md., Inc. v. Pub. Serv.*

6

*Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002) ("The *Rooker-Feldman* doctrine merely recognizes that 28 U.S.C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments, which Congress has reserved to [the Supreme] Court . . . " (citing 28 U.S.C. § 1257(a))); *see ASARCO Inc. v. Kadish*, 490 U.S. 605, 622 (1989) ("The *Rooker-Feldman* doctrine interprets 28 U.S.C. § 1257 as ordinarily barring direct review in the lower federal courts of a decision reached by the highest state court, for such authority is vested solely in this Court."); *Merritts v. Richards*, 62 F.4th 764, 774 (3d Cir. 2023) (same). A *Rooker-Feldman* defense should be, as here, presented through a motion to dismiss pursuant to Rule 12(b)(1). *Ninal v. Evangelista*, No. 04-5718, 2005 WL 2710742, at *3 (D.N.J. Oct. 21, 2005); *see Merritts*, 62 F.4th at 774 (3d Cir. 2023).

When considering a Rule 12(b)(1) motion challenging subject matter jurisdiction, "[a] district court has to first determine . . . whether [the] motion presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed." *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 357-58 (3d Cir. 2014) (citing *In re Schering Plough Corp. Intron*, 678 F.3d 235, 243 (3d Cir. 2012)). As the Third Circuit explained in *Constitution Part of Pennsylvania v. Aichele*:

> A facial attack, as the adjective indicates, is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law, or because there is no indication of a diversity of citizenship among the parties, or because some other jurisdictional defect is present. Such an attack can occur before the moving party has filed an answer or otherwise contested the factual allegations of the complaint.

*Id.* at 358 (citing *Mortensen*, 549 F.2d at 891). On the other hand, a factual attack "is an argument that there is no subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction." *Id.* In reviewing a factual attack, the court "may weigh and 'consider evidence outside the pleadings.'" *Id.* (citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176

7

(3d Cir. 2000), *holding modified by Simon v. United States*, 341 F.3d 193 (3d Cir. 2003)). "A district court has 'substantial authority' to 'weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Exel v. Govan*, No. 12-04280, 2013 WL 3146849, at *2 (D.N.J. June 18, 2013) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977)). "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*

While "courts generally treat a pre-answer motion under Rule 12(b)(1) as a facial challenge," *id.* (citing *Cardio–Med. Assoc., Ltd. v. Crozer–Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983), a "factual challenge under Rule 12(b)(1) may be made prior to service of an answer" where, as here, the defendants "contest the plaintiff's allegations." *Id.* (citing *Berardi v. Swanson Mem'l Lodge No. 48 of Fraternal Order of Police*, 920 F.2d 198, 200 (3d Cir. 1990)). Although Defendants do not state whether they consider their Rule 12(b)(1) motions to be a facial or factual attack, they seek to rebut Plaintiff's factual allegations with public filings from a foreclosure action in the Superior Court of New Jersey concerning Plaintiff's former property, to which Plaintiff was a party. Therefore, the Motions present a factual challenge and will be treated accordingly. *See id.*; *see Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999). Where a defendant raises a factual challenge to the Court's subject matter jurisdiction, the plaintiff bears the burden of establishing jurisdiction. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000)).

b. **Rule 12(b)(6)**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is required to accept as true all factual allegations in the pleading and draw all reasonable inferences from those allegations in the light most favorable to the non-movant, *see Phillips v. Cnty. of Allegheny*, 515

F.3d 224, 231 (3d Cir. 2008), but need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). To survive a motion to dismiss, a pleading must therefore contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted).

### III. DISCUSSION

#### a. The *Rooker-Feldman* Doctrine

Upon reviewing Plaintiff's Complaint, the Court finds that the *Rooker-Feldman* doctrine applies. The *Rooker-Feldman* Doctrine deprives district courts of subject matter jurisdiction over causes of action where: "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Jacobsen v. Citi Mortg. Inc, (NJ)*, 715 F. App'x 222, 223 (3d Cir. 2018) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). The second and fourth elements are the crux of the doctrine. *Duffy v. Wells Fargo Bank, N.A.*, No. 06-4453, 2017 WL 2364196, at *5 (D.N.J. May 31, 2017). Thus, "a claim is barred by *Rooker–Feldman* . . . if the federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong." *Easley v. New Century Mortg. Corp.*, 394 F. App'x 946, 948 (3d Cir. 2010). "The Third Circuit has specifically held that the *Rooker–Feldman* doctrine bars federal courts from providing relief that would invalidate a state court foreclosure decision." *Nest v. Nationstar Mortg., LLC*, No. 16–4282, 2016 WL 4541871, at *2 (D.N.J. Aug. 31, 2016) (citations omitted); *see Jacobsen v. Citi Mortg. Inc.*, No. 17-1555, 2017 WL 3877848, at *1 (D.N.J. Sept. 5, 2017), *aff'd sub nom. Jacobsen*, 715 F. App'x

at 222 (holding the *Rooker-Feldman* doctrine applied where the plaintiffs alleged that they were injured by a judgment in a state court foreclosure action).[2]

Here, the Court finds that all the requirements of *Rooker-Feldman* are satisfied. Plaintiff was a defendant in the state court foreclosure action, wherein Lakeview prevailed in foreclosing on Plaintiff's former property, thereby satisfying the first element of *Rooker-Feldman*.

Plaintiff's Complaint repeatedly alleges that his injuries include the enforcement of the loan documents in the state foreclosure action, and subsequent foreclosure and pending sale of his home, which are the direct result of the state court foreclosure judgment.[3] (Compl. ¶¶ 71-72, 95). Moreover, Plaintiff's First Count alleges that the injury resulting from Defendants' purported violations of the CARES Act and myriad New Jersey statutes was allowing "an improper entity . . . to foreclose." (*Id.* at 49). Thus, the second element of *Rooker-Feldman* is satisfied because Plaintiff complains of injuries caused by the state court foreclosure judgment.

Because the May 24, 2023 state court foreclosure judgment predated the filing of Plaintiff's Complaint, the third element of *Rooker-Feldman* is satisfied. (*See* Kofman Decl. Ex. O, ECF No. 9-16 at 4-6; ECF No. 1).

Lastly, the Court finds that the fourth element of *Rooker-Feldman* is satisfied. Plaintiff asks this Court to determine that Defendants lacked standing to foreclose on his property and stay the pending sale of the property in contravention of the foreclosure judgment. (ECF No. 1 at 24-25, ¶¶ 112-17); *see Gage v. Wells Fargo Bank, NA AS*, 521 Fed. App'x. 49, 51 (3d Cir. 2013)

---

[2] Plaintiff argues that *Rooker-Feldman* is inapposite because the United States Supreme Court has only applied it in two cases. (ECF No. 14 at 5-6). Contrary to Plaintiff's assertion, "[f]ederal actions following state mortgage foreclosures have frequently been the subject of *Rooker-Feldman* challenges on the ground that the two were inextricably intertwined, and that the federal complaint seeks to undermine or reverse the basis for the foreclosure." *Schmidt v. Fein, Such, Kahn & Shepard, P.C.*, No. 18-00038, 2018 WL 4144685, at *3 (D.N.J. Aug. 30, 2018). "Such federal claims have routinely been dismissed under *Rooker-Feldman*." *Id.*

[3] The sale of Plaintiff's former home was scheduled for May 22, 2024 (ECF No. 1 at 25). Neither party has informed the court of the subsequent disposition of that sale. If the sale has occurred, Plaintiff's request for a stay is moot.

(holding that federal plaintiff's challenge to foreclosure judgment and subsequent sale was barred by *Rooker-Feldman*). Plaintiff further challenges the validity of the assignments upon which the foreclosure judgment was based, "meaning that federal relief can only be predicated upon a conviction that the state court was wrong." *Easley*, 394 F. App'x at 948; (*see* Compl. ¶¶ 15-17, 107). Similarly, Plaintiffs' assertion that he was wrongfully denied a forbearance in violation of the CARES Act challenges the grounds upon which the foreclosure judgment rests. *See Nest*, 2016 WL 4541871, at *2. Thus, Plaintiff is "inviting the district court to review and reject the state judgment[]." *Jacobsen*, 715 F. App'x at 223.

Accordingly, the *Rooker-Feldman* doctrine bars all of Plaintiffs' claims that this Court can glean from his inartfully pled Complaint, with the exception of those arising from the September 22, 2023 letters, which were sent subsequent to the state court's foreclosure judgment and thus do not require this Court to review and reject it. With the exception of Plaintiff's claims relating to the September 22, 2023 letters, Plaintiff's claims must also be dismissed because they are precluded by New Jersey's entire controversy doctrine.[4]

### b. **The Entire Controversy Doctrine**

Under New Jersey's "entire controversy doctrine, a party cannot withhold part of a controversy for later litigation even when the withheld component is a separate and independently cognizable cause of action."[5] *In re Mullarkey*, 536 F.3d 215, 229 (3d Cir. 2008). The doctrine is

---

[4] Defendants also argue that Plaintiff's claims, with the possible exception of his RESPA claim relating to the September 22, 2023 letters, are barred by *res judicata* and collateral estoppel. (*See generally* ECF Nos. 9, 10, 11). Because the Court finds that dismissal is appropriate due to the absence of subject matter jurisdiction under *Rooker-Feldman* and by application of the entire controversy doctrine, the Court need not reach Defendants' additional preclusion arguments. *See Petraglia v. U.S. Bank, N.A.*, No. 17-6325, 2018 WL 355146, at *4 (D.N.J. Jan. 9, 2018).

[5] As the Third Circuit has recognized, "[a] federal court hearing a federal cause of action is bound by New Jersey's Entire Controversy Doctrine, an aspect of the substantive law of New Jersey, by virtue of the Full Faith and Credit Act, 28 U.S.C. § 1738 (1994)." *Rycoline Products, Inc. v. C & W Unlimited*, 109 F.3d 883, 887 (3d Cir. 1997). "In other words, 'a federal court must give the same preclusive effect to a state-court judgment as another court of that State would give.'" *Id.* (quoting *Peduto v. City of North Wildwood*, 878 F.2d 725, 728 (3d Cir. 1989)). The doctrine

"an extremely robust claim preclusion device that requires adversaries to join all possible claims stemming from an event or a series of events in one suit." *Chavez v. Dole Food Co., Inc.*, 836 F. 3d 205, 229, n.130 (3d Cir. 2016). "This doctrine is codified in the New Jersey Court Rules, which provide that '[n]on-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine.'" *Murray v. Crystex Composites, LLC*, 618 F. Supp. 2d 352, 357-58 (D.N.J. 2009), *aff'd*, 378 F. App'x 159 (3d Cir. 2010) (quoting N.J. Ct. R. 4:30A).

In the context of foreclosure actions, New Jersey law limits application of the entire controversy doctrine by barring only "germane" counterclaims as defined by N.J. Ct. R. 4:64-5 if they are not asserted in the foreclosure action. *See In re Mullarkey*, 536 F.3d at 229. A claim is germane where it arises from the mortgage that is the basis for the foreclosure action. *See Leisure Tech Northeast Inc. v. Klingbeil Holding Co.*, 137 N.J. Super. 353, 358 (App. Div. 1975) (holding that New Jersey courts take a "liberal rather than a narrow approach" to determining whether a counterclaim or defense is germane to a foreclosure action); *see also Sun NLF Ltd. Partnership v. Sasso*, 313 N.J. Super. 546 (App. Div. 1998), *certif. denied*, 156 N.J. 424 (1998) (holding that claim that bank had breached contract with borrower was germane to foreclosure proceedings).

Here, Lakeview Defendants and Greentree contend that application of New Jersey's entire controversy doctrine bars all of Plaintiff's claims, with the possible exception of his claims relating to the September 22, 2023 letter. (ECF Nos. 9-1 at 17; 11-2 at 6). This Court agrees. Plaintiff's claims concerning Defendants' alleged failure to grant his request for forbearance, alleged violations of the CARES Act, and assertions that Defendants lacked standing to foreclose are all clearly germane to the foreclosure action. *See Leisure Tech Northeast Inc.*, 137 N.J. Super. at 358;

---

"reaches more broadly than the 'same cause of action' requirement of traditional res judicata doctrine." *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 965 (3d Cir. 1991)).

*Sun NLF Ltd. Partnership,* 313 N.J. Super. at 546. Furthermore, Plaintiff's RESPA claim alleging that he was not notified about the mortgage assignments is barred, as "[c]ourts in this district have found that in foreclosure cases germane claims include '[c]laims that loan servicers violated their statutory duties under RESPA.'" *Sparkman v. Wells Fargo Bank Nat'l Ass'n,* No. 19-CV-2351, 2022 WL 4445402, at *5 (D.N.J. Sept. 23, 2022) (quoting *Collas v. Wells Fargo Bank, N.A.,* No. 17-cv-11866, 2018 WL 6499706, at *4 (D.N.J. Dec. 11, 2018)). Thus, such RESPA claims cannot be raised in subsequent litigation pursuant to the entire controversy doctrine. *See, e.g., id.; Howard v. Wells Fargo Bank, N.A.,* 733 F. Supp. 3d 352, 360 (D.N.J. 2024), *aff'd,* No. 24-2010, 2024 WL 4890984 (3d Cir. Nov. 26, 2024); *Siljee v. Atl. Stewardship Bank,* No. 15-CV-1762, 2016 WL 2770806, at *10 (D.N.J. May 12, 2016).

Accordingly, the entire controversy doctrine bars all of Plaintiff's claims with the exception of those arising from his allegations relating to the September 22, 2023 letters, which were subsequent to the foreclosure judgment and thus could not have been raised in the state court proceedings.[6]

### c. **RESPA and 12(b)(6)**

While Plaintiff's RESPA claims arising from the September 22, 2023 letters are the only to survive application of *Rooker-Feldman* and the entire controversy doctrine, Defendants assert that such claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). "RESPA requires a mortgage loan servicer who receives a QWR to conduct a reasonable investigation to satisfy the inquiry and respond to the request in a certain timeframe." *Kajla v. U.S. Bank Nat'l Ass'n for Credit Suisse*

---

[6] Defendants also argue that Plaintiff's claims, with the possible exception of his RESPA claim relating to the September 22, 2023 letters, are barred by *res judicata* and collateral estoppel. (*See generally* ECF Nos. 9, 10, 11). Because the Court finds that dismissal is appropriate due to the absence of subject matter jurisdiction under *Rooker-Feldman* and by application of the entire controversy doctrine, the Court need not reach Defendants' additional preclusion arguments. *See Petraglia v. U.S. Bank, N.A.,* No. 17-6325, 2018 WL 355146, at *4 (D.N.J. Jan. 9, 2018).

13

*First Bos. MBS ARMT 2005-8*, No. 17-8953, 2018 WL 1128498, at *7 (D.N.J. Mar. 1, 2018), *aff'd sub nom. Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Bos. MBS ARMT 2005-8*, 806 F. App'x 101 (3d Cir. 2020) (citing 12 C.F.R. § 1024.36(d)). "However, a prerequisite for RESPA to apply is an existing mortgage." *Id.* Lakeview Defendants argue that Plaintiff's RESPA claim fails as a matter of law because when Plaintiff sent the QWR, the loan was already merged into the final judgment and there was no longer a loan under which to make a QWR inquiry. (ECF No. 9-1 at 19-20). "Under New Jersey law, a mortgage loan is extinguished once a judgment of foreclosure is entered." *Perez v. Seterus, Inc.*, 2017 WL 5513687, at *4 (D.N.J. Nov. 16, 2017); *see also Genid v. Fannie Mae*, CC, at *3–4 (D.N.J. Aug. 2, 2016) (dismissing RESPA claim because the QWR and related communications occurred post-foreclosure).

Here, the final foreclosure judgment was entered on May 24, 2023, and the QWR letter Plaintiff alleges in his Complaint was sent after that time. (*See* Compl. ¶¶ 63-66; Kofman Decl., Ex. O, ECF No. 9-16 at 4-6). By the time Plaintiff sent his letter, Plaintiff could no longer avail himself of RESPA's protections because the mortgage loan was already extinguished. Accordingly, Plaintiff's allegations relating to the September 22, 2023 QWR letter fail to state a claim and must be dismissed.[7]

### d. <u>Leave to Amend</u>

Throughout his opposition to the instant Motions, Plaintiff asks that if the Court finds dismissal is warranted, he be afforded the opportunity to amend his Complaint.[8] Defendants argue

---

[7] Having found that dismissal is warranted on the foregoing grounds, the Court need not consider Defendants' additional arguments in support of dismissing Plaintiff's RESPA claims, including that they were not mailed to the appropriate address and did not relate to transfer of the mortgage loan's, but instead concerned its assignment and potential modification. (*See* ECF Nos. 9-1 at 19; 10-1 at 22-23; 11-2 at 6); *see Kajla*, 2018 WL 1128498, at *7 n.6.

[8] (*See, e.g.*, ECF No. 14 at 8 ("If the Court fails to see what it is [Plaintiff] has attempted to say due to [his] improperly wording the complaint, he stands ready, willing, and able to amend his complaint to make a more definite statement."); *id.* at 18 (Plaintiff "is ready, willing and able to amend this section to be more precise, should the court feel that he did not specify that the servicing was transferred."); *id.* at 20 ("Should the Court agree that [Plaintiff] has failed to [p]lead

14

that leave to amend should be denied because amendment is futile. (ECF No. 15 at 12-14; ECF No. 19 at 11-12; ECF No. 20 at 6). Pursuant to Federal Rule of Civil Procedure 15(a), once a party's time to amend as a matter of course expires, "a party may amend its pleading only with the opposing party's written consent or the court's leave", and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision to grant leave to amend rests within the sound discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Research Inc.*, 401 U.S. 321, 330 (1970). At the outset, the Court notes that Plaintiff's request does not comply with L.Civ.R. 15.1, which provides that:

> (a) Except as provided in section (b) of this Rule, or as may be excused by the Court, a party who seeks leave to amend a pleading shall do so by motion, which shall state whether such motion is opposed, and shall attach to the motion:
>
> (1) a copy of the proposed amended pleading; and
>
> (2) a form of the amended pleading that shall indicate in what respect(s) it differs from the pleading which it proposes to amend, by bracketing or striking through materials to be deleted and underlining materials to be added.

Here, although Plaintiff vaguely suggests that he is willing to address the deficiencies in his Complaint through an amended pleading, Plaintiff fails to articulate his proposed amendments—either through a proposed amended complaint or in his opposition briefs—thereby frustrating the Court's ability to determine whether amendment would be futile. Moreover, it appears that Plaintiff requests the opportunity to amend only if this Court finds that his claims do not survive the instant motions.

---

... [d]amages, or agree with defendants on any of the assertions of [Plaintiff] not properly pleading any of the associated claims, [Plaintiff] is ready, willing and able to Amend the Complaint to remedy any defects, and/or to make such damages known."); ECF No. 16 at 3 ("If the Court agrees that the allegations are sparse, Plaintiff stands ready, willing, and able to Amend to make a more definite statement against Freedom.").

Accordingly, the Court will dismiss Plaintiff's Complaint without prejudice to Plaintiff's ability to move for leave to amend, to the extent Plaintiff maintains any claims that survive application of *Rooker-Feldman*, New Jersey's entire controversy doctrine, and Fed. R. Civ. P. 12(b)(6).

## IV. CONCLUSION

For all the foregoing reasons, Defendants' Motions to Dismiss (ECF Nos. 9, 10, 11) are **GRANTED**. An Order consistent with this Opinion will be entered.

Dated: January 28, 2025

KAREN M. WILLIAMS
UNITED STATES DISTRICT JUDGE